JAMES McFADDIN V. VINCENT.

Where there is great inadequacy of price, a Court of Equity or a jury will closely scrutinize the facts, and give weight to slight evidence of imposition and circumvention, where one of the parties is of weak intellect.

Error from Harris. Tried below before the Hon. Peter W. Gray.

Petition filed March 18th, 1855, in Brazoria county District Court. Amended petition as follows : That sometime towards the close of the year 1853, plaintiff came to Texas for the purpose of engaging in the occupation of planting, and that he brought with him the following negro slaves, viz : [Here followed the names, ages and alleged value of the slaves.] All of which negroes were slaves for life, and the undisputed property of your petitioner. During the month of November, in said year, 1853, he bargained with James McFaddin, the defendant in this suit, for his plantation in the county of Brazoria, situated about six miles below the town of Brazoria, for which he agreed to give him the sum of ten thousand dollars, two thousand dollars in cash and the remaining eight thousand in three promissory notes, each for the sum of two thousand six hundred and sixty-six 67-100 dollars ; one coming due the 1st day of January, 1855 ; the second, the 1st day of January, 1856 ; and the third and last coming due the 1st of January, 1857. Your petitioner avers that he paid him the sum of two thousand dollars as agreed upon, and executed his three promissory notes as aforesaid, each bearing date the 13th day of November, 1853. The defendant at the time of making the sale above specified, misrepresented the value of the plantation to him, telling him of the many advantages it possessed, and

of none of the disadvantages. He, the said McFaddin, over-reached and defrauded your petitioner, by inducing him to pay an exorbitant price for the plantation, and then inducing him to sign a deed of trust, conveying said plantation and all his negroes above specified, to B. C. Jones, Abner Jackson and S. Strobet, authorising them, as trustees, to sell the plantation and slaves for cash at public auction, upon the failure of your petitioner to pay said promissory notes above specified, or either of them when they became due, by giving only twenty days notice; and also specifying that upon the failure of your petitioner to pay either one of said notes the others to become due. Your petitioner avers that he would not have signed said deed of trust had he known its stipulations; but he was imposed on by said McFaddin, who took advantage of your petitioner's unsoundness of mind and incapacity of making a contract about so important a matter, and he also misstated the force and effect of the deed of trust, making it appear to your petitioner a mere matter of form.

Your petitioner would further represent, that during the year 1854 he failed in making a crop on said plantation; that he and most of his negroes were sick during a great part of the summer; that he was greatly harrassed and annoyed by certain creditors of his, who were continually urging him to pay their claims; which together with many other vexations and annoyances, so disturbed him that he was not in a sound state of mind, and that he was incapaple of transacting business; that on or about the 14th day of November, in the year 1854, while in this state of unsoundness of mind, in order to get rid of the importunities of his creditors, and being urged by the said Mc-Faddin, who followed him up for the purpose, in a fit of desperation and not knowing what he was doing, he reconveyed the plantation back to said Mc-Faddin and also conveyed to him the negro slaves above mentioned; for all of which he has since learned he was to receive the sum of twelve thousand dollars, to be paid in the following manner, viz: the

said McFaddin was to give up the notes above specified for eight thousand dollars, which were still unpaid, and he was to give your petitioner his note on time for four thousand dollars; keeping the two thousand dollars already paid on the plantation by your petitioner ; by which transaction your petitioner in point of fact was only to receive two thousand dollars for the thirteen negroes above specified, while they were worth at least, by the lowest calculation, ten thousand dollars.

Your complainant would aver that at the time the first transaction was made between himself and the said McFaddin, he was not of sound mind, and was incapable of transacting any business of importance, and that he was imposed upon by said McFaddin as to the terms and condition of the deed of trust he was in a manner forced to sign ; and that owing to his many misfortunes and annoyances and troubles during the summer and fall of 1854, and for a long time before and since, and at the time of the last sale above mentioned, he was incapable of contracting or transacting any business of importance; and the said defendant, James McFaddin, taking advantage of his state of mind and unfortunate condition, overreached and defrauded him out of the negro slaves above mentioned.

Your petitioner therefore prays that the first sale above mentioned may be set aside on account of its unreasonableness ; the fraud on the part of said McFaddin, and because the condition of your petitioner's mind was such as to render him unfit to make a binding contract of so much importance. Your petitioner also prays that the last sale above mentioned, may be set aside on account of fraud in the defendant, and the incapacity of your petitioner at that time to contract, and that the Court render its judgment against said McFaddin in favor of your petitioner, that he return to him said negro slaves or pay their value in money, and that judgment be rendered against him for costs, in this behalf expended, and for such other and further relief as he, in equity and good conscience, may be entitled to.

Amendment of amended petition as follows : Plaintiff avers his readiness to deliver up the note for $3,910, and the amounts of money paid to the plaintiff by the defendant, with interest up to date, upon the said sale of lands and negroes made by Vincent to McFaddin being set aside and the title to said land and negroes being decreed to petitioner.

Answer of defendant, a general demurrer, general denial of all allegations not afterwards admitted, and special allegations as follows : That at the earnest request of the plaintiff, he, the defendant, purchased, for a full and valuable consideration, the plantation on which he lately resided in said county, containing about five hundred acres of land ; and he also purchased for a full and valuable consideration, and at the earnest and often repeated requests of said plaintiff, all of the negro slaves named in plaintiff's petition ; that said plaintiff executed his deeds and conveyances of said land and slaves ; and that the same are duly recorded in the County Clerk's office of Brazoria county.

And for further answer he says that the said plaintiff, on the — day of March 1855, in said county of Brazoria, with force and arms, in the night time, broke open his dwelling house in said county, and chained and hand-cuffed this respondent in his said house, and forcibly carried away from his plantation in said county all of his negro slaves mentioned in the petition, and also the negro boy Leven and the negro boy Joe ; all of which said negroes were in the peaceable possession and owned by this respondent on the day last mentioned ; that this respondent with great difficulty broke the lock with which the plaintiff had fastened and locked said chain, and procured a warrant from Robert F. Clement, a Justice of the Peace for said county, and pursued said plaintiff and overtook him in Galveston county, where he had said plaintiff arrested, together with one Whiteman, and said slaves named in the petition ; that he was put to great trouble and expense in recovering his said slaves from the plaintiff ; that he was interrupted in the

cultivation and management of his plantation aforesaid ; that he suffered great mental anxiety by reason of the actings and doings aforesaid, of the said Vincent, and by the cruel treatment aforesaid, and has suffered damages to the amount of ten thousand dollars, by the actings and doings of said Vincent ; and the expenses attending the recovery of said negro slaves have damaged this respondent ten thousand dollars ; that the loss of his time in pursuing said Vincent and slaves, and the loss of hiring of said slaves, are worth one thousand dollars. The said Vincent is indebted to him for the hiring aforesaid ; that he is also indebted to him for meat and provisions stolen out of his smoke house, at the time aforesaid one hundred dollars. Wherefore he pleads the aforesaid sums in reconvention, and alleges that said Vincent is justly indebted to him in the aforesaid sums, for which he prays judgment and for the costs of this suit.

Amendment of answer as follows : That on the 14th day of November, 1854, he gave his promissory note to the said plaintiff for the amount of three thousand nine hundred and ten dollars ; which said note was due and payable on the 1st day of February, 1855, and was secured by a deed of trust executed by this defendant to the plaintiff, on all the property mentioned in the pleadings, a copy of which is filed in the papers of this suit, and is referred to as a part of this answer, and being the balance heretofore unpaid for the purchase of said property. He further says, that on the 27th of February, 1855, he paid the plaintiff and his agent or assignee, Rufus R. Ridley, three thousand and eighty dollars, which payment is endorsed on said note, and the said plaintiff is required to produce the same in Court. He further represents that on the 14th of January, 1856, in the town of Brazoria, he tendered and offered to pay the plaintiff the sum of nine hundred and thirty dollars, which sum exceeded the balance due at said time upon said note, but the said plaintiff rejected the said amount and tender. He prays therefore that the said plaintiff

be decreed to surrender up said deed of trust; that the same may be cancelled, and that the lien and incumbrance upon the property therein mentioned be set aside and annulled; and that he be quieted in his title to the same. And as heretofore he again prays for judgment against the said plaintiff and for his said damages.

Plaintiff demurred to defendant's plea of reconvention, as insufficient in law as a defence to this suit. Venue changed to Harris by defendant.

The demurrers were overruled, and came a jury, &c., who " after having heard the evidence, the argument of counsel and the charges of the Court, retired to consider their verdict on the following issues, presented by the Court," viz: 1st. Was the original contract for the land by plaintiff invalid? 2d. Was the contract of re-sale of the land and sale of the negroes from plaintiff to defendant invalid? 3d. Whether the defendant has suffered damage by the plaintiff's committing a trespass in taking the negroes from his possession," &c. Verdict for the plaintiff on the first two issues, and for the defendant on the third, assessing his damages at $300. Judgment accordingly. Motion for new trial overruled.

The testimony was very voluminous, and tended to different conclusions. The Court instructed the jury as follows: On the first two issues the plaintiff claims that the contracts were invalid on the ground that he was a man of unsound or weak mind, and that the defendant took advantage of his incapacity by making inequitable or unconscientious bargains with him. The law presumes every man sane, until the contrary appears; and monomania or insanity on some subjects is not sufficient to avoid a contract, unless it was on the subject of, or connected with, the matter of the contract. Nor is want of good judgment sufficient of itself to set aside a contract. Nor is mere inadequacy of consideration a substantial ground for setting aside a contract, when the party is of sound mind and judgment. But when a man is of weak mind; that is of less intellect than

ordinary, so as to be unable to guard himself against imposition or influence of others, then a great inadequacy of price or consideration, for a deed made by him, is a circumstance indicating that he has been taken advantage of, and if other circumstances indicating that he has been induced to act hastily or imprudently appears, they will be sufficient to avoid the deed. If you believe from the evidence, that the plaintiff was a man of weak intellect naturally, or produced by illness or misfortune, below the average of mankind, so that he was liable to be imposed on, and that defendant traded with him at a price for the land greatly above its value, and induced him to secure it by mortgage on his negroes as well as the land, knowing that he was of weak intellect, then find for plaintiff on the first issue; but otherwise for defendant. Or if plaintiff was a man of weak intellect, as before stated, and became involved in debt and perplexed by his difficulties, and defendant influenced him to re-sell the land and convey the negroes to him at a price greatly less than their value, then find for plaintiff on the second issue; but otherwise for defendant.

If you find for defendant on the first and second issues, and the plaintiff by himself or others acting with him, by violence seized and confined the defendant, and carried away the slaves from his possession, then you will find for defendant not only such damages as he may have actually sustained in consequence, but also such amount as will punish the plaintiff for his violence and breach of the law; but if you find for plaintiff on either the first or second issue, and that he committed the violence not maliciously, but in order to recover possession of his own property, then the defendant can only recover such actual damages as he may have sustained by the defendant's acts.

There was a motion by defendant in arrest of judgment, one ground of which was that the Court erred in the submission of the special issues to the jury, but it did not appear that any objection was taken thereto before verdict.

*P. MacGreal,* for plaintiff in error. I. In support of first assignment, it is urged that the petition and amendments are contradictory, inconsistent, indefinite and show no cause of action.

II. In support of the second assignment, it is insisted that there was no proof to authorise the Court to present to the jury the first issue ; and that the Court, in the absence of all proof to support that issue, misled the jury and prejudiced the case.

III. In support of the third assignment, by reference to the charges following the issues, the Court will perceive that the jury was in effect instructed to find for the appellee on the first and second issues, made up and presented by the Court, regardless of the law and regardless of the rights of the appellant.

IV. That the Court erred in overruling the motion of appellant for a new trial, and in arrest of the judgment, is manifest ; but it is consistent with the previous rulings of the Court, in this case, if that can be regarded as. excusable.

V. To sustain the proceedings in the Court below, this Court is asked to *infer fraud* and presume insanity in the absence of proof satisfactory to any reasonable mind.

*L. A. Thompson,* also, for plaintiff in error. I. We contend that the demurrer should have been sustained. The validity of the purchase of the land in November, 1853, is for the first time assailed in the amended petition. The sale is alleged to be invalid because of misrepresentations of McFaddin as to the land, and concealments of its defects ; but it is not stated or alleged in what the misrepresentations consisted, nor what were the defects or disadvantages which were concealed, so as to enable the defendant to make defence. Unsoundness of mind is not alleged, except when he speaks of the terms of the deed of trust, and the execution thereof ; and then rather by way of recital than of averment.

Neither in the original nor amended petition is there any offer by Vincent, since he has become sane, to put the other party in *statu quo ;* to refund the money received, and to allow him for the use of the land while in his possession.

By the amendment filed December 3, 1856, (the day of the trial,) the plaintiff offers his readiness to give up McFaddin's note for $3,910, and the amount of money which was received in part payment thereof, with interest ; but it is upon the condition that the sale of the land and slaves made by Vincent to McFaddin being set aside, and the title to said land and slaves being decreed· to him the plaintiff !

II.   The Court erred in making up and presenting to the jury the three issues for their determination ; because although the petition alleged the invalidity of the sale of the land in 1853, yet there was no evidence upon the point.

Unsoundness of mind cannot be urged to impeach this transaction in this case, for in both the original and amended petitions, the unsoundness of the plaintiff's mind is alleged to have been caused and superinduced by subsequent events, which occurred in 1854, viz : his sickness, the urgency of his creditors, and the loss of his crop in September of that year.

Submitting the first issue then of the invalidity of sale of the land in 1853, had the effect of misleading the jury, inducing them to believe that in the opinion of the Court there was evidence tending to maintain that allegation of the amended petition.

III.   As to the re-sale of the land, and the sale of the slaves made by Vincent to McFaddin in November, 1854, we say there is no sufficient evidence to support the verdict.   (Here counsel discussed the evidence.)

*Munson & Lathrop,* for defendant in error.   I.   There were numerous errors assigned, but we shall only notice those that we deem of any importance.   The first and second error assigned amounts to nothing at all, as there was nothing but a

general demurrer filed, and no notice was taken of the same in the Court below.

II.   The third and fourth errors assigned are that the Court erred in the issues presented to the jury, and in their charge to the jury.   The issues presented were certainly in accordance with the pleadings of the parties.   The plaintiff sought to have the first and second trades set aside, and the defendant sought damages for the tort committed by the plaintiff.   That the charges of the Court are in accordance with the law it seems to us there can be no doubt.   (1 Story's Eq., Sec. 234 to 240 ; Id., Sec. 244 to 251, with the cases therein cited ; Burch v. Smith, 15 Tex. R.; 219.)   If there was any error in the last charge, we could go back further and say that the exception of plaintiff to the plea in reconvention should have been sustained.

III.   The fifth ground of error assigned is, that the Court overruled the motion for a new trial.   (Here counsel discussed the evidence.)

ROBERTS, J.   We are of opinion that the issues arising on the pleadings and facts of this case, were properly presented by the Court to the jury.   Nor can we say that the jury were not warranted, in the verdict which they found on them, by the evidence.

The main question was whether or not Vincent was of weak mind, by which he was liable to be, and was, overreached by McFaddin in the several trades made by them in relation to the land and negroes.

As to the last trade, which was made in 1854, the allegations of the petition are full, and they are sufficiently sustained by the evidence.   The allegation in the amended petition reads as follows : " Your complainant would aver that at the time the first transaction was made between himself and said McFaddin, he was not of sound mind, and was incapable of transacting any business of importance, and that he. was imposed

upon by the said McFaddin as to the terms and conditions of the deed of trust."

The evidence in support of this is by no means as strong as that in relation to the last trade. The terms of the first trade were such as the jury had a right to conclude to be very hard and onerous. They placed Vincent completely in McFaddin's power, unless Vincent was possessed of, or could command, more means than have yet come to light. Then as to Vincent's unsoundness of mind, at the time of the first trade, McFaddin's witnesses say, that Vincent displayed the same mental capacity from his arrival in the country in 1853 up to the time of the trial, and that all the time he was sane, and capable of contracting. But Vincent's witnesses say that early in 1854, and from that time on, he exhibited an incapacity to manage important business, from want of soundness of intellect; and that he could be easily overreached by a man of McFaddin's shrewdness. The jury, believing from the evidence that early in 1854 his mind was not sound, and learning that it had undergone no material change since his arrival, they inferred the same weakness to have existed at the making of the first trade which characterized the second.

The result of the transactions show, that, after making two trades, and twice executing papers evidencing them, McFaddin had thirteen likely negroes, worth ten thousand dollars, and the consideration given for them was two thousand dollars and the use and wear of his plantation one year. With such a result as this, a Court of equity or an impartial jury will closely scrutinize the facts, and will give weight to slight evidence of imposition and circumvention, when one of the parties is of weak intellect. (Story on Contracts, Sec. 38; 1 Story, Eq. Jur., Sec. 234 to 240; Id. 244 to 251.)

This is a case of conflicting evidence, and from a careful examination of the facts we cannot say that the verdict is wrong. And there being no error in the ruling of the Court the judgment is affirmed.

Judgment affirmed.