### GRAND LODGE BROTHERHOOD OF RAILROAD TRAINMEN v. MARTIN. (No. 2161.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 26, 1919. Rehearing Denied Dec. 11, 1919.)

INSURANCE &=246 — ONLY PREMIUMS PAID RECOVERABLE ON REPUDIATION OF BENEFIT POLICY DURING INSURED'S LIFE.

The repudiation and attempted cancellation, without cause, by an insurer of its contract of life insurance during life of insured, though, after a claimed total and permanent disability of insured which, if such, would entitle him to certain benefits, not terminating or impairing the contract, but it being terminated only by the voluntary election of insured to acquiesce in the abandonment, his measure of recovery is not the value of the policy, but, at most, the premiums paid, with interest.

Appeal from District Court, Fannin County; Ben H. Denton, Judge.

Action by Prince J. Martin against the Grand Lodge Brotherhood of Railroad Trainmen. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

C. W. Collister, of Cleveland, Ohio, and Thos. P. Steger, of Bonham, for appellant.

Rosser Thomas, of Dallas, and Cunningham & McMahon, of Bonham, for appellee.

HODGES, J. The appellant is an unincorporated fraternal benefit society organized under the laws of the state of Ohio, and is engaged in the business of insuring the lives of its members .residing in Texas and elsewhere. In August, 1916, it issued a policy to Prince J. Martin, by the terms of which it insured his life for the benefit of his wife in the sum of $2,000 payable at his death. The policy also contained a provision which entitled the insured to certain specified benefits in the event he became totally disabled before death. The constitution of the appellant required the premiums to be paid in periodical installments in the form of dues and assessments. Some time after the issuance of this policy, Martin became insane, and this condition appears to have been treated as a total and permanent disability under the terms of the policy. Appliction was made in his behalf for the benefits payable upon the occurrence of that condition. This application was denied by the appellant, who at the same time repudiated the policy upon the ground that in his application for insurance Martin had made false representations concerning the state of his health. Appellant also attempted to cancel the policy, and refused thereafter to accept any more premiums from Martin or his beneficiary. Following this repudiation of the policy and its attempted cancellation, this suit was filed by Leon Hairston, as next friend, for Martin. After alleging the material facts and setting out the substance, terms, and conditions of the policy, its repudiation, and cancellation by the appellant, the amended original petition concludes with the following prayer for relief:

"Plaintiff here alleges that he has been damaged by the acts of the defendant in the amount here sued for, and that he brings this suit for the sum of two thousand dollars, the amount of the policy, plaintiff here alleging that by reason of the allegations hereinbefore made defendant became liable and promised to pay the damages occurring by reason of the breaches herein alleged."

The appellant filed an appropriate defense, in which it reiterated the charge that the policy was void because of the false representations made by Martin concerning the state of his health. In the trial below the court submitted special issues, in response to which the jury found that Martin had not made the false representations charged, and that had the policy remained in force the premiums thereafter accruing could and would have been paid by Martin or some one for him. The measure of damages was submitted in the following form:

"What amount of money, if paid now, would represent plaintiff's damages, if any, he has? In answering this last question you will take into consideration the amount of the policy, the length of time that Prince J. Martin will probably live, the cost to plaintiff of carrying said insurance under the contract issued by the defendant."

In answering this last question, the jury fixed Martin's damages at $1,560. It is conceded by the appellant that the facts are sufficient to sustain the finding of the jury that Martin had not made any false representation concerning his health. That being

true, we then have a case in which the insurer repudiated its contract of insurance without cause, gave notice of that fact to the insured, and wrongfully attempted to cancel the policy. There appears to be a wide divergence of opinion among the courts, both in this state and out of it, as to the correct rule for ascertaining the damages recoverable in cases of this character. Some of them hold that the rule applied by the honorable trial judge in this instance, the value of the policy at the time it is repudiated, is the proper one. Supreme Lodge K. of P. v. Neeley, 135 S. W. 1046, and the cases there collated and discussed. See, also, 3 Cooley's Briefs on Law of Insurance, pp. 2840–2848, where the subject is discussed at some length. Others hold that the return of the premiums paid by the insured with legal interest is the most satisfactory of compensation. Lovejoy v. Washington Life Ins. Co., 149 S. W. 398; K. of P. v. Mims, 167 S. W. 843; Am. Nat. Life Ins. Co. v. Wilson, 176 S. W. 623; Ericson v. Supreme Ruling, 105 Tex. 170, 146 S. W. 160.

This conflict may be accounted for in part by the diversity of the facts involved in the different cases under consideration. Whatever conflict there may be regarding the application of a standard of measuring the damages, the court are agreed upon this fundamental proposition: The insured should recover the full amount of what he has lost by reason of the wrongful abandonment of the contract by the insurer, and no more. The pertinent inquiry in each case then should be: What rights conferred by the insurance contract have been lost by the wrongful conduct of the insurer? That rule must be the proper one which furnishes the most satisfactory standard for ascertaining that loss. In the case before us the appellant, without cause, repudiated its contract and attempted to cancel the policy of insurance. The question arises: What were the legal consequences of that misconduct, and what effect did it have upon the contract rights of the insured? What damage did he or his beneficiary sustain by reason of that attempted cancellation of the policy? Evidently none. The unauthorized repudiation or abandonment of an executory contract by one party before the date of performance does not affect or lessen his original obligation. 6 R. C. L. pp. 929–931.

In this instance the validity of the appellee's policy was not in any respect impaired, or his burdens increased, by the attempted cancellation. As a life policy it has not matured, and the appellee had the right to continue the payment of his premiums, or, if these were refused, to tender payment, and thus keep the policy alive till death matured it. Or if he wished to enforce the total disability clause, that might have been done by appropriate legal proceedings at the time.

It is true that, when one party to an executory contract repudiates his obligation before the date of performance, the other has the legal right to then treat the contract as abandoned and secure reimbursement, or compensation, according to the situation this brought about. When the repudiation of the contract by the insurer has no legal effect upon his obligations specified in the policy, and is not attended with any conditions or circumstances which impair the value of the contract, the election of the insured to acquiesce in the abandonment, and thus terminate the policy, is purely voluntary. The parties are then in the attitude of having agreed to rescind their contract. The appropriate remedy would then be, not an action by the insured for a breach of the contract, but one for reimbursement. There can be no breach of an executory contract in advance of its maturity, unless the offending party has placed some obstacle in the way of performance. In such instances, the termination of the insurance contract results, not from the misconduct of the insurer, but from the act of the insured in exercising his option to rescind. The policy ceases to be effective because the insured consents that it may be canceled. Hence, whatever right he thereby loses is such as he voluntarily surrenders; and he cannot thus surrender a legal right and then claim damages for its loss. The contract being out of the way by his concurrence in the acts of the insurer, the most the insured may claim is restoration to his original status. This, it seems, may be accomplished by a return of the premiums paid, together with legal interest. That rule, however, is not applicable to cases where the cancellation of the policy by the insurance company in legal effect terminates the insurance, or is attended by conditions which impair or destroy the value of the insurance contract. In such instances the loss resulting from the wrongful conduct of the insurer may exceed the sum of the premiums paid. But whether they do or not, that rule does not furnish the correct standard for loss. The amount recoverable should be controlled by that standard which best determines the extent of the loss occasioned by the wrong committed, and it is doubtless true that the value of the lost insurance policy would furnish the most satisfactory test.

The argument is made that it is frequently unfair to the insurer to require the return of the premiums paid; that to do this ignores the benefits enjoyed by the insured during the life of the policy. Some courts hold that the protection thus furnished has a value which should be taken into account in adjusting the rights of the parties. Conceding that proposition to be correct, it could not make the rule requiring a return of the premiums inapplicable to controversies like the present. Here the insurance com-

pany is insisting that the full return of all premiums is the proper measure of the appellee's recovery. But if it were otherwise, the value of the temporary insurance might be deducted from the sum of the premiums in making an equitable adjustment of the rights of the parties. If the value of that insurance is such that it should be considered, it is sufficiently appreciable to be ascertained, and, when ascertained, to be practically accounted for.

We therefore conclude that in the trial below the court applied an improper measure for ascertaining the appellee's damages, and for that reason the judgment should be reversed, and the cause remanded.

The remaining assignments need not be considered.