## SWINK v. CITY OF DALLAS. (No. 10149.)

Court of Civil Appeals of Texas. Dallas.
June 20, 1929.

Rehearing Denied July 13, 1929.

Clint & Eades, of Dallas, for appellant.

J. J. Collins, City Atty., and H. P. Kucera, A. A. Long, and W. Hughes Knight, Asst. City Atty., all of Dallas, for appellee.

LOONEY, J. Rebecca Z. Swink sued the city of Dallas to recover an acre of land, part of the site upon which the city maintains Cedar Lawn School, and prosecutes this appeal from an adverse judgment.

The material facts are these: On October 28, 1879, G. M. Swink, deceased husband of plaintiff, conveyed the land in controversy, by warranty deed, to R. E. Burke, county judge of Dallas county, and his successors in office. The conveyance was made "in consideration * * * of the land being used for

school purposes by R. E. Burke, County Judge, and his successors in office, of the County of Dallas." Following the description of the land, this language was also used: "In the event that the above described land should cease to be used for school purposes, then this conveyance to be void and the land, with the improvements thereon, to revert back to the said G. M. Swink."

On October 15, 1879, John J. Eakins and wife conveyed to same grantee for the same purpose, in similar form, and under almost identical provisions, an acre of land adjoining the land conveyed by Swink. These tracts together constituted a school site of two acres, upon which a public school was maintained by the county of Dallas, or under its jurisdiction, until April 5, 1888, when the territory, including the school site, was by ordinance legally incorporated into, and became a part of, the city of Dallas, and, since its admission, the city has maintained a school there as a part of its public school system, and, as the necessity has arisen, expended for additional improvements between $25,000 and $30,000; that the city's use of the premises for school purposes was open, adverse, and unchallenged from the year 1888 down to the institution of this suit. The school maintained by the city was the regular elementary school for grades one to seven and the kindergarten, until, beginning with the session of 1926–1927, all children, except the unusual and subnormal, were sent to Colonial Hill and Fair Park, adjoining schools, and the premises have been since the beginning of that term, and now are used as a concentration point for children that need special attention and education, such as the unusual and subnormal.

G. M. Swink, husband of plaintiff, died testate in the year 1905, leaving his property to plaintiff, and appointing her independent executrix.

On September 26, 1918, plaintiff personally and as independent executrix conveyed by general warranty deed the land in controversy to the city, in consideration of $1,000. On November 11, 1924, the board of education of the city accepted an offer from E. W. Morton of $50,000 for the school site in question, but the sale was never consummated, and the contract, it seems, has been abandoned on account of the pendency of this litigation.

Plaintiff sought to have the deed from her to the city rescinded on the ground that its execution was procured by fraud, that at the time she was mentally incapacitated to understand the nature of the transaction and to recover the land under the residuary clause in the deed from her husband to the county judge of Dallas county, her insistence being that, when the county, in 1888, ceased to use the land for school purposes, title reverted immediately to the grantor, that the city took possession without authority, and has used the property as a tenant at will or sufferance of the owner; but, if it be true that the city

succeeded legally to the rights granted R. E. Burke, county judge, and successors, by reason of the land having been incorporated into and becoming a part of, the school system of the city, that nevertheless it was later abandoned by the city, and title reverted when the city contracted to sell to Morton.

The city answered by general denial, urged four years' limitation to plaintiff's attempt to rescind her deed to the city; pleaded ten years' limitation to her suit for the recovery of the land under the reversionary clause of the deed; alleged that, at the time the deed to the county judge was executed, plaintiff and her husband owned a large area adjoining the land conveyed, that the consideration for the conveyance was the resultant benefit to the remaining land from the maintenance of a school at the place, and that, after the location of the school there, plaintiff and her husband conveyed to others all lands owned by them in the vicinity, and were as a consequence no longer interested in the maintenance of the school, therefore the condition of the deed had been fully satisfied; and answered further that the deed to the county judge was a conveyance of the land in fee simple to the public school system of Texas, subject only to a condition subsequent, to the legal effect that, if the land should cease to be used for school purposes during the life of G. M. Swink, title should revert to him, exclusively; if therefore on his death in 1905 any right existed under the reverter provision of the deed, the same terminated.

The parties have exhaustively and ably briefed and argued their respective contentions, but, under our view of the case, it is only necessary to notice one question, that is, defendant's plea of four years' limitation to plaintiff's suit to rescind her deed to the city, for, if this cause of action is barred, the deed stands, all interests she had in the land passed to the city on September 26, 1918, and other questions presented become immaterial.

Plaintiff's cause of action for rescission, if any she had, arose when the alleged fraud that induced her to execute the deed was discovered, or by the use of reasonable diligence under the facts and circumstances could have been discovered.

Mrs. Buckingham, plaintiff's daughter, present at the interviews between her mother and Mr. Ethridge, who conducted negotiations on behalf of the school board, gave testimony bearing on this issue, as follows: That during the time Mr. Ethridge was negotiating for the deed her mother was over 80 years of age, was in bad health, and confined to her room and bed most of the time. Ethridge said there existed a cloud on the title to the acre of land, and desired the signature of her mother to remove it. He offered her at first $200, which was rejected. Later he came back, made a similar statement in regard to the status of the title, that is, that it was school property, belonging to

the city for such purpose, and would always be school property, but the city was willing to pay her something to clear the title, and offered $300 and $500, but these offers were not accepted. Nothing more was said for several months, and then her mother was offered $1,000, and witness said: "We accepted that offer and received the money." She further testified that her mother understood when the deed was executed that she was signing the same to clear the cloud from the title to the land, and signed because she thought she was clearing the title; that her mother was sick and in feeble health at the time, and witness made a full explanation of the matter to her, and she understood that. Ethridge said the land would belong to the city; that her mother's signature not being on the original deed caused a little cloud, and they desired her signature; that whether she signed or not made but little difference, but they would like to have her signature, and would pay her for it.

Evidently referring to statements made by Ethridge, from which she received certain impressions in regard to the status of the property, the witness said: "I was present and heard about making this deed, but I don't know as I understood it exactly like she did, but I suppose I did, because I was listening and then I discussed it with my sister. My sister, my mother and myself understood the property belonged to the city or the school board and she had no interest in it, that was the drift of the conversation, we had no interest at all in it, never had and never would have. Mr. Ethridge came to see us, as I said, and talked to my mother and then went to my husband and talked to him several times."

Mrs. Henry, plaintiff's other daughter, testified in substance that the purchase of her mother's interest in the land by the city was discussed for five or six months by members of the family, and, after the offer of $1,000 was made, she wrote the proposal which the school board accepted, as follows: "Gentlemen: In answer to your inquiry, will say, that I will take $1,000.00 and give a clear title to the Cedar Lawn property, if taken in thirty days."

This offer bears date August 16, 1918, and was signed by plaintiff. Mrs. Henry further said that her mother told her she had received $1,000 from the city for the deed; that she realized her mother signed the deed in compliance with this proposal; that she understood the city procured the deed to clear the title; that she did not hear, until 1924, that the city intended to cease the use of the property or would attempt to sell same; that she read of this in the newspaper, and thereafter this suit was instituted; that, after the execution of the deed by her mother, neither she nor her sister, Mrs. Buckingham, made any investigation of the records.

Plaintiff testified in her own behalf, and it is evident her memory as to recent transactions was very defective. When first questioned, she could not remember having signed any deed to the city in 1918, but said she remembered the transaction. She used this language: "I think someone from the school board came to see me about some property, but I don't remember who it was." At first she could not remember having received $1,000 from the city, but recalled the fact that she deposited that amount of money in the bank. When shown the deed, she said: "That is my signature," and later she said: "That is the deed we are talking about, the city gave me $1,000.00. I now recall the transaction."

In order to avoid the bar of four years' limitation, plaintiff must find support in this evidence for the idea advanced that the alleged fraud that induced plaintiff to execute the deed was not known to plaintiff, and by the exercise of reasonable diligence could not have been ascertained within four years from the date of the deed. If it can be said that this testimony supports any theory of deception or fraud, it lies in the fact that Ethridge asserted that the city owned the property for school purposes, and would continue its use, that there was simply a little cloud or defect in the title that could be cured by the signature of plaintiff, and the further fact that, in this connection, he said nothing to indicate that the city intended to abandon the use of the property for school purposes, or would in the future attempt its sale.

It is obvious that all facts in regard to the status of the title to the property were either known to plaintiff, her daughters and sons-in-law, or could have been readily ascertained; the public records of the county and city were open to public inspection; the use that had been made of the property by the county and city, and the use then being made of the property by the city, were matters of recent and current history, and of a nature that, if not actually known, could have been readily ascertained by them. That nothing was said by Ethridge in regard to the future abandonment and sale of the property by the city is readily understood; the city had made no decision to do either—therefore the disposition the city would make of the property when full title was acquired was a problem altogether for the future.

As more than four years elapsed after the execution of the deed before she instituted the present suit, her cause of action for rescission was clearly barred, unless the facts take the case without the bar of the statute.

The rule sustained by the decisions of our own courts, as well as by the great current of English and American authorities, was stated in Calhoun v. Burton, 64 Tex. 510–515, by Judge Stayton, as follows:

"Whatever doubts may have existed theretofore, since the case of Munson v. Hallowell, 26 Tex. 475 [84 Am. Dec. 582], was decided, it has been the law of this court that undiscovered fraud will prevent the running of the

statutes of limitation, subject, however, to the qualification that the failure to discover the fraud must not be attributable to the want of exercise of proper diligence by the party asserting it."

In Boren v. Boren, 38 Tex. Civ. App. 139, 85 S. W. 48–51, a case similar to the one at bar, although the facts there were very much more favorable to the party seeking rescission than are the facts with which we are dealing, this court, in an opinion by Judge Talbot, held that the party alleged to have been defrauded had means to readily discover the alleged fraud, such as would have been used by a person of ordinary care in the transaction of his own business; therefore was charged, as a matter of law, with due notice of everything which a proper use of the means at hand would have disclosed. This doctrine rules the question now under consideration. We therefore hold that plaintiff's right to rescind, if any existed under the facts, was barred before the suit was instituted, and that the deed executed by her conveyed all interest she had in the land in controversy to the city.

The case will therefore be affirmed.

Affirmed.