## ILLINOIS BANKERS' LIFE ASSUR. CO. v. GARRISON.

### No. 3781.

Court of Civil Appeals of Texas. Amarillo.
April 6, 1932.

Rehearing Denied April 27, 1932.

Hamilton, Fitzgerald & Grundy, of Memphis, for appellant.

Sanders & Scott, of Amarillo, for appellee.

JACKSON, J.

The plaintiff, Harry J. Garrison, instituted this suit in the district court of Wheeler county, Tex., against the defendant, the Illinois Bankers' Life Assurance Company, to recover damages in the sum of $5,000 for the cancellation of certain insurance certificates held by him in the defendant company.

The plaintiff alleged:

That about April 12, 1913, the Illinois Bankers' Life Association issued to the plaintiff two certificates of membership, by the terms of which, in consideration of certain warranties and the initial payment, plaintiff was admitted to membership in said association. That each of said certificates provided that, in the event of the death of plaintiff during the continuance of such membership, his beneficiary, Mary F. Garrison, should receive the sum of $2,000. That each of said certificates stipulated that premium payments should be made periodically to keep the certificate in full force and effect, under penalty of forfeiture, and that, if plaintiff became permanently and totally disabled, one-half of each certificate should be paid at the time of such permanent and total disability and the remainder at his death.

That the Illinois Bankers' Life Association, which issued to plaintiff his certificates, was thereafter reorganized and incorporated under the name of Illinois Bankers' Life Assurance Company, which, as the successor, assumed the liabilities of the Illinois Bankers' Life Association, including the obliga-

tion to continue the membership of this plaintiff and to pay to his beneficiary the money evidenced by said certificates, according to the terms thereof, to the same extent as was the Illinois Bankers' Life Association. That, in pursuance to the provisions of the certificates, the plaintiff paid all the calls for premiums made by the Illinois Bankers' Life Association and the Illinois Bankers' Life Assurance Company, in compliance with the constitution and by-laws. That he paid quarterly, beginning with June, 1913, the sum of $6.75 on each of said certificates until June 1, 1921. That on said date the quarterly assessment was reduced to $6.55, on each certificate, after which time he paid quarterly on each the sum of $6.55 up to and including October, 1930, and that all of such payments were received and appropriated by the defendant and its predecessor.

That on about November 15, 1930, the defendant notified the plaintiff that his certificates of membership had been canceled and were no longer in force and effect. That afterward he was advised by the defendant to submit to a physical examination for reinstatement as a member and for the reinstatement of his certificates of insurance, and submitted himself to the defendant's physician, who, after giving him a physical examination, reported his condition to the defendant, but the nature of the report is unknown to plaintiff. That, after receiving said report, the defendant refused to reinstate the plaintiff, and notified him that the cancellation of his membership certificates was effective and final, and that he would not be reinstated.

He alleges that the cancellation of his certificates was unwarranted and wrongful, by which he was damaged in the sum of $5,000; that, if it should be held that the cancellation of his certificates was not wrongful, then he was entitled to reinstatement under the constitution and by-laws and the laws of the state of Texas, and defendant's refusal to reinstate plaintiff was wrongful, by which he was damaged in the sum of $5,000. He prayed upon a hearing for judgment for his damages in the sum of $5,000, with interest, for the wrongful cancellation of his certificates of insurance, or, in the alternative, for the wrongful refusal to reinstate the plaintiff as a member of the organization and for such other and further relief, general and special, to which he was justly entitled in law or in equity.

The defendant answered by general demurrer and general denial, and specially alleged that, under the certificates sued on and the terms of the by-laws of the company, it was the plaintiff's duty to pay the defendant at Monmouth, Ill., all calls levied within thirty days from the time of mailing notices thereof, and the failure to pay such calls

within such time rendered the policy absolutely null and void, and resulted in a forfeiture without further notice of any kind; that such calls, under the policy and by-laws, were for payment of premiums due on the certificates sued on; that on the 24th day of September, 1930, the defendant mailed to plaintiff at Wheeler, Texas, two calls for premiums, advising him that on October 1, 1930, the sum of $6.55 would be due on each certificate at the office of the defendant at Monmouth, Ill.; that the plaintiff failed within thirty days from the time of mailing said notices for the payment of premiums to pay the defendant said amount or any part thereof, by reason of which the certificates are null and void and of no further force and effect.

In a supplemental petition, in reply to the defendant's answer, the plaintiff urged a general demurrer and general denial, and alleged that, prior to October 1, 1930, the defendant had made a practice of receiving and accepting premium payments due on certificates more than thirty days after the due date and continuing certificates in force and effect, regardless of the forfeiture clauses contained in said certificates or the by-laws of the company. He then pleads in detail numerous instances, beginning as early as 1925, that the defendant accepted the payment of his premiums after the lapse of the thirty days notice, and says that, because of such acts and conduct of the defendant, he was induced to believe that premiums on the certificates would be accepted after their due date, and defendant waived the forfeiture clause, and is estopped from asserting it as a defense against the plaintiff.

The defendant, in a supplemental answer, demurred generally, specially excepted to the supplemental petition of plaintiff because the matters therein set out could not be properly set up in a supplemental petition, as the allegations therein constitute a part of plaintiff's cause of action, and should have been pleaded in an amended original petition, and pleaded general denial.

In response to special issues submitted by the court, the jury found that prior to October 1, 1930, the defendant waived the right to forfeit plaintiff's certificates for nonpayment of premiums within the thirty-day period, and that the defendant had accepted payment of premiums on said certificates after the thirty-day grace period had elapsed. On this verdict judgment was rendered for the plaintiff against the defendant for the "sum of $1,105.55, this being the amount of premiums paid by the plaintiff to the defendant, plus the legal rate of interest thereon from date of payment of premiums," from which judgment the defendant prosecutes this appeal.

The appellant urges as error the action of

the trial court in refusing to submit its requested special issue submitting to the jury whether the Illinois Bankers' Life Assurance Company assumed the payment of the certificates and policies of insurance issued by the Illinois Bankers' Life Association.

The appellee contends that the evidence on this question was uncontroverted, and therefore no issue of fact was presented for the jury's determination.

The appellee alleged that the Illinois Bankers' Life Assurance Company assumed the liabilities of the Illinois Bankers' Life Association, including the obligation to pay to his beneficiary the money evidenced by the insurance policies issued to him by the Illinois Bankers' Life Association, and, under appellant's plea of general denial, this was clearly made an issue in the pleading.

The testimony offered by appellant is to the effect that the Illinois Bankers' Life Association is still in existence, but is not writing any new business; that on November 19, 1929, the appellant and the Illinois Bankers' Life Association entered into a contract by the terms of which all premiums accruing to the association should be paid to appellant and all death claims thereafter accruing should be paid by it out of the funds of the Illinois Bankers' Life Association, and that, after said contract was entered into, the premiums of appellee were received by appellant; that appellant was to handle the assets of the Illinois Bankers' Life Association as trustee, and pay out of the funds of the association the death claims that might accrue under the terms of the certificates and policies, and that appellant was to receive a percentage of the premiums collected for its services; that appellant was not organized and incorporated for the purpose of taking over the business, certificates, and policies of the Illinois Bankers' Life Association.

■ The action of the court in refusing to submit this issue was equivalent to a peremptory instruction given in favor of appellee on such issue. In determining whether the court committed error in refusing to submit such issue to the jury, we are required to consider the evidence offered by appellant only and to consider such testimony most favorably to appellant's contention. Swink v. City of Dallas (Tex. Com. App.) 36 S.W.(2d) 222; Beck v. American Rio Grande Land & Irr. Co. (Tex. Civ. App.) 39 S.W.(2d) 640; Childress v. Sullivan (Tex. Civ. App.) 38 S. W.(2d) 826; Boone v. City of Stephenville (Tex. Civ. App.) 37 S.W.(2d) 842; Massie v. Hutcheson (Tex. Civ. App.) 296 S. W. 939.

■ This case having been tried to a jury and the issue requested by appellant having been presented by the pleadings and raised by the testimony, the court committed reversible error in refusing to submit such issue at appellant's request.

■ The appellant's contention that the court erred in overruling its exception to appellee's pleading waiver and estoppel in a supplemental petition is not tenable.

No fixed rule appears to have been established for determining the amount recoverable for the wrongful cancellation of a life insurance policy by the insurer. The courts apparently have adopted the measure of damages which under the facts of each case will most nearly compensate the insured for the loss sustained. Suprème Lodge, Knights of Pythias v. Neeley (Tex. Civ. App.) 135 S. W. 1046; Provident Savings Life Assurance Society of New York et al. v. Ellinger (Tex. Civ. App.) 164 S. W. 1024; Grand Lodge, Brotherhood of Railroad Trainmen v. Martin (Tex. Civ. App.) 218 S. W. 40; Perez v. Ft. Worth Mutual Benevolent Association (Tex. Civ. App.) 291 S. W. 574.

"On wrongful cancellation or repudiation of the policy by the company, insured or his beneficiary, as the case may be, may in many jurisdictions recover as damages for the breach of contract all the premiums paid with interest thereon from the time or times of payment, subject to a deduction for cash benefits received from the company before the breach. This rule as to measure of damages is not, however, of uniform application and it has been denied. * * * The damages recoverable for wrongful cancellation or repudiation are not necessarily limited to the premiums paid; they may be measured by the value of the policy at the time of the wrongful cancellation or breach, together with interest from that time, but subject to a deduction for unpaid premiums and for insurance already had. If, however, an attempted cancellation has not impaired the validity of the policy and it has not matured, its value is not the measure of damages for the cancellation. If insured is still insurable at the time of the breach, the measure of damages is the difference between the cost of carrying the insurance that he has and the cost of new insurance for the same amount and term, in other words, the difference between the then present value of the premiums which would have to be paid under the cancelled policy during insured's probable life and the present value of the premiums he would be compelled to pay under a policy that could be obtained from another responsible company. If insured is no longer insurable at the time of the breach, the measure of damages is the amount of the policy, less the cost of carrying it to maturity had it remained in force." 32 C. J. 1265, §§ 465, 466.

Appellant's assignments urging that the court erred in failing to direct a verdict in its behalf are overruled.

The judgment is reversed, and the cause remanded.